Sattrass, on behalf of James Allen, who appeals the denial of his habeas corpus petition that's similarly alleged ineffective assistance of counsel. And I'm going to focus my comments today on the central failing of counsel, which was his failure to object and protect Mr. Allen from the prosecutor's introduction of a fact outside the evidence that was critical. rule, namely that Roderick Dewberry, the known accomplice in this robbery of the Goodwill store, was the brother of James Allen. And I want to go directly to the State court ruling because, as the Court mentioned in the prior argument, the issue before it is whether the State court's decision in denying relief was contrary to an unreasonable application of clearly established law. In this case, we say it was an unreasonable application of strickland, which requires relief where the defendant shows deficient performance of counsel and prejudice. We start with the State court's finding of fact, which is presumed correct here, that, indeed, the prosecutor's representations to the jury, an introduction of the fact that Mr. Dewberry and Mr. Allen were brothers, was objectionable because it was not supported by the evidence. Are they brothers? We don't know, because the fact is that the guy, you don't know if it's his brother or not. As far as the evidence at trial is concerned It wasn't my question. If they went back and held evidentiary hearing, would it turn out that they were brothers? That would all be subject to confrontation, testing of the evidence. But that's not the issue. The prosecutor doesn't get to bring in any fact outside the evidence that may be true or not. We have a trial process for a very good reason, and a defendant is entitled to all those protections. We do that. Well, if we had an assumption that happens to be true and forgot to put on the evidence of it, I would say that would be harmless error. Harmless error? I have never heard of the mirror image of actual guilt. We have actual innocence that can save a defendant from a conviction, even where all the trial processes may be correct. I've never heard of actual guilt where we're going to go outside the evidence, find out if he's really guilty, and then every improbable point. Just that one point. Excuse me, Your Honor? The only evidence, just that one point, whether he's his brother. But that was a critical fact. If he had objected to that evidence and then either called somebody that was his brother or relative or something, then it would seem to me to be harmless error. Well, no. Like the inevitable discovery in a search question. Your Honor, the trial evidence was closed. We're in closing argument now. The prosecutor had tried in various ways to present competent evidence through witnesses at trial to establish that fact. It shouldn't be too hard to establish if, in fact, it is true. But he was unable to do that. So, you know, I think what happened here was in this zealousness, he's investigated the case, he knows, quote, unquote, that they're brothers, and so he's going to – he can't restrain himself from telling the jury that fact. Counsel, was there some evidence in the record of some familiar relationship between these two? No. There was no – What about Kathy Fisk's testimony? There's evidence in the record that the robber was the – made a reference to Dewberry as his brother or cousin. The issue in this case, this is a case of identification, is Mr. Allen the robber? So there's no evidence that connects – that shows that Mr. Allen is the brother of Mr. Dewberry unless you conclude that Mr. Allen is the robber. But that's why – But there was evidence in the record about some familiar relationship between the robber and Mr. Dewberry. So it's not like – is this a foreign concept introduced into the trial with no – Well, the evidence was, as from Fisk, was there may have been some reference. She didn't remember whether it was a cousin or brother. But that's not the way – and remember, we have a State court finding here that this prosecutor's representation to the jury in closing argument was misconduct that was objectionable. That's a finding of fact. Yeah. The question we have now is whether or not it's reversible or whether there was any prejudice, whether it made a difference in the outcome of the trial. That's where we are. Right. And, well, of course, the first finding that the State court makes is that it wasn't deficient performance even because trial counsel reasonably didn't bother raising an objection to that objectionable comment because he was focused reasonably, as the Court says, entirely reasonable strategy of exploiting, quote, unquote, the rich vein of reasonable doubt and mistaken identity in the evidence. But those are totally complementary strategies. But, counsel, if – isn't it a legitimate defense strategy to try to ignore something that's damaging so as not to call it to the attention of the jury more? If he had objected, wouldn't the jury have focused on that question and then that would have really emphasized to them that perhaps he was a villain? No, because the objection would have been that's outside the evidence. You get an admonition from the jury. There is no evidence that – of any fraternal connection between Mr. Dewberry and Mr. Allen. And jury, you may not consider that there is. So there'd be no reasonable basis to try to not object on the basis of the jury might overlook this, especially when the prosecutor is making the argument. It's not like a passing incidental reference that maybe is best left untouched. This is one of the main points the prosecutor is making. He's bringing back all the time. How many times? Seven or nine times, seven, eight, nine times, both in the opening argument to the jury and in the rebuttal he makes reference to the fact. You know, what the court of appeals said, there may not have been any evidence that they were brothers, but it really didn't matter if they were brothers, cousins, or just friends. That was – the point is that they had some connection to one another. And it really – you know, this is not a will contest where, you know, we're trying to figure out his exact relationship. The point is that they were affiliated in some way. So it didn't matter if it was mischaracterized. But the point is that there was a complete absence of evidence that Mr. Dewberry and Mr. Allen were anything but total strangers, that they had ever met in their entire life. There was no connection. Now, naturally, there's going to be some connection between Mr. Dewberry and the robber. I mean, it could have been brothers, it could have been cousins, it could have been colleagues at school, they could have been longtime friends. That – but there was no evidence showing that Mr. Allen and Mr. Dewberry had any connection to each other. But if the jury made the connection that Mr. Allen was the robber and the robber was Mr. Dewberry's relative, then you go, Mr. Allen's the robber, the robber is Mr. Dewberry's relative, so Mr. Allen is Dewberry's relative. Yes, but that isn't probative of guilt. If – because, as I said, the robber is going to have some connection to Mr. Dewberry, presumably, unless he just picked him off in front of the store and said, let's go rob him. Yeah, unless the jury determined that Mr. Allen was the robber, independently of any relationship with Mr. Dewberry, they wouldn't determine that they were. If that was done. But that is not the way it was argued by the prosecution. The prosecutor argued that you should find that the identification by Evans of Mr. Allen, despite all the discrepancies and, you know, so forth, you should find that it's a good one because, look, after all, they are brothers. But, counsel, was there anyone who identified Mr. Allen as the robber, independently of connecting him to Mr. Dewberry? Is that your argument? Well, no. There was a witness identification, a witness who said, this man, shown in a photo lineup and so forth, and in court, this man is the man I saw who robbed me. Right. And what the prosecutor argues is, and this is at Excerpt of Record 191, how is it that Mary Evans identifies a man in a photo lineup that just happens to be the brother of Mr. Dewberry? It's almost like better than the odds of DNA evidence. Out of all the universe, you know, Humphrey Bogart, out of all the gin joints in the world, I suppose, out of all the universe of people who Mary Evans could have identified as the culprit in this case, she happens to pick the fellow who is the brother of Mr. Dewberry. That doesn't negate the fact that he was identified as the robber. That's just kind of additional evidence that he was the relative of someone who had previously worked there. Right. But the prosecutor is shoring up. There are serious identification problems in this case. It is a very good identification case. The State Court is right that there's a rich vein to mine, and what the prosecutor, and that's why it's so probative in this case. If, for the prosecutor, if he had been able to, to present evidence that there's, these guys are associated. Mr. Allen and Mr. Dewberry are associated. They know each other. They're, in fact, they're brothers, let's say. Then that becomes the seal. That helps resolve all of the doubts the jury has as to the reliability. Counsel, regardless of the relationship, was there evidence that these two men had been seen together? There was evidence that the robber and Mr. Dewberry were seen at the scene of the crime the day before. As if they're, like, casing out the joint or whatever. Not when they were in the vehicle across the street. There was some, wasn't there some testimony that they were seen, somebody left the car and came back. Yes. And these were, so whether they were related or not, does not matter, isn't crucial. The crucial point is they were seen together in the vicinity of the crime, casing the joint. Well, Mr. Dewberry, his identification is given, well known. He's a former employee of the store. Obviously, the employee's identification of him, that's gold. And the defense counsel admits as much in closing argument. What about the people across the street? Nobody else can identify Mr. Allen as the person with Dewberry. We have Mary Evans making that identification. And that's what the case largely rides on. What was the description given of the two men who were in the car who were seen across the street? Did it fit? It didn't particularly fit because Mr., in one critical way it didn't fit was Mr. Allen was known to be totally bald. And all of the witnesses described the robber as having short hair. Wasn't he wearing a hat? Right. Right. So that's what the prosecutor was arguing. Don't let that take you away. But the description of the robber actually fit Morris better than it did Mr. Allen. Now, Morris, remember Mr. Morris was a witness who testified, and he had, he was known to be, he had frequent and close ties to Dewberry. He was known to be associated with Dewberry. He was picked out initially tentatively by one of the witnesses as most closely resembling the robber. He didn't look like Mr. Allen either. And he was impeached with the fact that he was a convicted robber. But I think, Your Honor, the point that I'm trying to make is that having the prosecutor come in and hammering, these guys are brothers, these guys are brothers, these guys are brothers, it's not based on the evidence of that was presented at trial by a witness who says there was a reference to them either as being cousins or brothers. I mean, if it had been, then the prosecutor would have been said, there's some evidence that Mr. Dewberry and the robber are brothers or cousins, but so what? That doesn't get the prosecutor any way, anywhere further in getting the jury to accept the fact that Mr. Allen is that robber. What gets him mileage and helps him to overcome the doubts that are in the evidence about the reliability of the identification is the, you know, what seals it is some evidence independently that Mr. Allen and Mr. Dewberry are some kind of associates. So then, oh, yeah, well, then Evans must have been right in her identification because we can resolve all the doubts on the basis that these guys are actually brothers. So it stands to reason that Mr. Allen is that guy. He's the one who's associating with Mr. Dewberry. Without that, that's why it's such critical evidence, and that's why the state court's finding of no prejudice on the basis that there was an instruction given that statements of counsel are not evidence is so unreasonable because that is such a strong probative fact in what is a very close case, and it's not appointed admonition that is given at the time that the evidence comes, or that the argument is made to advise the jury, like I was talking about earlier, hey, jury, there's no evidence of this fact. You can't rely on the prosecutor's representation. But the instructions that were given in arguments of counsel are not evidence. So do you think the jury disregarded that? Because the cases are fairly clear that when you have such obvious misconduct that has such an obviously prejudicial effect in what is a very close case, that kind of general generic instruction does not overcome the prejudice. You cannot expect the jury, first of all, to understand even in that case. The instruction wasn't that the arguments of counsel are not evidence. The instruction was any statements that counsel may have made in the course of this trial are not evidence. That was just a generic instruction that was given among a number of other instructions. It's not pointed or specific or directed at the misconduct at all, and I've cited a number of cases that have found that that kind of instruction does not overcome the prejudice from specific misconduct, particularly of an introduction of a fact outside the evidence. Otherwise, the prosecutor would be free to bring in whatever facts that he omitted or failed to present at trial, and the argument could be made, well, no harm, no foul, because they got this generic instruction that said, don't pay any attention to what the prosecutor says in terms of evidence. Counsel, during opening statements, the court said, this is an opening statement. Remember, folks, what the district attorney tells you is not fact. You have to determine those from the witness stand. Okay, of course, we're not talking about the opening statement. Well, you said that he mentioned it both in opening statement and in rebuttal. That was part of your argument. Opening statement before the evidence is presented. All right. Yeah. So you have no – that's not where your focus is, right? No. My focus is on opening argument and closing argument. Okay. Yeah. Closing argument and rebuttal is what you're saying. Yes. Yeah. Of course, he did say in opening statement, I'm going to be presenting evidence that they're brothers, and he started to go into the hearsay, and the defense counsel very alertly blocked that off. But, I mean, that was not misconduct because the prosecutor, you know, in good faith thought he would be able to present evidence of that. Where the misconduct comes in is that after all the evidence is in, he argues the case as if there – he did introduce into evidence the fact that they were brothers when he was unable to do that. Would you want to reserve any time, Mr. Sessions? I will reserve my remaining time, then, Mr. Chief Justice. Thank you very much. Good morning. Good morning, Your Honor. Dean Gillette, Senior Assistant Attorney General, representing the Respondent at Pele in this case. I have to begin by taking issue with the characterization by counsel of whether Mr. Dewberry or Mr. Allen were brothers as being the critical issue in this case. It really is not. The critical issue, obviously, is whether Mr. Allen was the robber. And what's particularly critical to that, and I believe this was covered in some questions by Judge Rawlinson, was that the robber was seen twice the day before in the store with Mr. Dewberry, whose identification has never been questioned and who unquestionably was a former employee of the store who knew their identification and was taken to the office when it was put in the safe. So whoever it was that was with Mr. Dewberry was with somebody who knew the procedures. Now, was there evidence that Mr. Dewberry and Mr. Allen had a relationship, of some sort of familial relationship? Yes, there was, as has been raised in the questions. The robber himself, who was identified as Mr. Allen, and I'll get to that in just a moment, on the second occasion when he was in the store the day before the robbery, referenced that he had been in earlier with his brother or cousin. The witness, Ms. Fisk, could not remember precisely what it was, but she said he clearly referenced that person as having been related to him. The prosecutor had substantial evidence available to him from the investigation, and much of that material is in the excerpt of record, that Mr. Dewberry and Mr. Allen were, in fact, brothers. Why wasn't that put on? They had anticipated, because Mr. Dewberry fled. He had been subpoenaed by the prosecutor. This is all developed in the record. He had been subpoenaed by the prosecutor. The prosecutor's investigator had met with Mr. Dewberry, had fully anticipated that Mr. Dewberry would testify, and that he would establish that they were brothers. When it turned out, the day before the trial, that Mr. Dewberry had suddenly made himself unavailable, despite the prosecution's best efforts to find him, the investigator had gone out to meet with Mr. Dewberry, and he didn't show up. They anticipated putting on Mr. Dewberry's wife, who could also make that connection. She, it turned out, could not do so. And although the prosecutor anticipated her testimony, she was unavailable to make that connection. So the reason you don't have the evidence, you don't refer to it as having been established, right? The prosecutor did not have explicit testimony at the trial, and I agree. He should not have argued that they were, in fact, brothers. He certainly could properly reference that Mr. Allen, in his statement to the witness, Ms. Evans, in the store on his second appearance there, excuse me, it was to Ms. Fisk, in his second appearance at the store, had referenced that he was with his brother or his cousin the day before. But the question becomes not whether the prosecutor should have made the statements or whether the defense attorney should have objected to them. The real issue, I think, the focus in this case, has to be on whether, assuming that an objection should have been made, the failure to do so was prejudicial, because it's the second prong of Strickland that I think is really significant in this case. And in that regard, we have to look at the evidence that was before the jury. The robbery victim, the woman from whom the money was actually taken at knife point, Ms. Evans, positively identified Mr. Allen. She did it in a lineup, and she did it in the courtroom. And she explained that the first lineup she was shown, she had tentatively selected Mr. Morris, but when she was later shown a second lineup, she was absolutely clear that it was Mr. Allen in that lineup. And she explained on the stand, she was examined about this, as to why she'd initially picked Mr. Morris and then why she was now certain that it was Mr. Allen. Ms. Fisk, who was in the store on the first day and who had left to take money to the bank just before the robbery occurred, had tentatively selected Mr. Morris, but she identified Mr. Allen in court and explained why. She thought, after having seen him in court, having viewed him twice the day before the robbery, she was certain that Mr. Allen was the man she had seen the day before. As to why they mistook Mr. Allen for Mr. Morris? Apparently, their descriptions are very similar. Their appearances are very similar. And Ms. Evans testified that she, and yeah, I believe the evidence establishes that she never said Mr. Morris was the robber. He was the one who most closely resembled it in that first lineup. And certainly the defense attorney focused on these issues. He went in his cross-examination and his argument into the descriptions, into the differences, into the fact that there had been conflicting identifications, and he argued reasonable doubt at length. And obviously the jury paid close attention, and we know that from what they asked to see during the deliberations. They asked to see the photographs of the lineups in which Mr. Morris and later Mr. Allen were identified. They asked to see the motorcycle ticket that Mr. Allen had received. Now that motorcycle ticket was important because it connected Mr. Allen to a motorcycle which had been seen the day before the robbery by the witnesses across the street. And they asked to see a chart the district attorney had prepared of the various identifications. But most critically, I think, they asked to have re-read for them all the testimony of the witnesses given physical descriptions of the robbers. I think, Judge Rawlinson, that goes precisely to the question you raised with counsel about what were the descriptions and how at all did they differ. The jury had heard some differences in the descriptions. They asked to hear all that testimony again. So they were obviously focused on that very critical question of was Mr. Allen the person who was in the store with Mr. Dewberry. Whether or not they were brothers was not a critical component to that determination. And the prosecutor never argued you must convict Mr. Allen because he was Mr. Dewberry's brother. He made references at various times to them having been brothers. For example, that very last comment that was quoted from the end of the prosecutor's closing argument by counsel. The prosecutor said, how is it that Mary Evans identifies a man in a photo lineup that just happens to be the brother of Mr. Dewberry? Given the evidence, he shouldn't have made that statement. But this is the rest of that argument. And referring to the person that Ms. Evans had identified, Mr. Allen, just happens to ride a motorcycle and the people at the scene, independent witnesses, see a motorcycle. Now that's just one example. The prosecutor throughout his arguments focused on all of that evidence and the critical evidence being the identification, pre-trial and at trial by Ms. Evans who was the robbery victim and the identification at trial of Ms. Fisk as Mr. Allen having been the person she'd seen there the day before. The connection of Mr. Allen to the motorcycle seen the day before when that person is then connected with a person in a car and that car can be connected to Mr. Dewberry who was also seen in the store with a man who we now know was riding the motorcycle, all of that evidence, circumstantial as it may be, nonetheless continues to add force to the description and more importantly to the identifications that were made in court by Ms. Evans. If there are other questions, I'd be happy to respond. Otherwise, I would submit it on the briefing and argument bill. Thank you, Your Honor. Thank you very much, Mr. Gillette. Mr. Cetras, back to you. You've got about a minute and a half. All right. Thank you. I agree with the Deputy Attorney General. There was prosecutorial misconduct. There was – there should have been an objection and the critical issue for this court is was there prejudice? And you have, like Your Honor mentioned, the witnesses seeing the robber multiple times before. But as the State Court found, that was a rich vein for the defense counsel to mine because with all those multiple contacts, two of the three couldn't identify Mr. Allen as him. One of the two employees who did not identify Mr. Allen did the previous identification of Morris. As Deputy Attorney General stated, Evans herself had made a tentative identification of Morris. We have no physical evidence that ties Mr. Allen to the robbery and no evidence that ties Mr. Allen to Mr. Dewberry. The prosecutor concedes in his opening argument there's a lot of inconsistencies in the witness ID of the robber. In his rebuttal, he admits there's enormous variation. He says again in his opening argument, the defense is going to have a heyday with the direct evidence on identification. He's going to make a great argument. There's not a lot I can do to rebut what the facts are. But he can do one thing and that is add to the facts. And that's what he does in this case with the addition of, by the way, my investigation – he doesn't say this, but this is where it's coming from. My investigation has shown these guys are really brothers and you should know that. Now, all of the jury deliberations would show that the jury was grappling seriously with the misidentification defense. They requested review of specific evidence. They requested a copy of the jury instructions. They requested readback. They deliberated for almost a day and a half. All of that goes to show the prejudice because it shows how close the case was and that the jury may well have resolved its difficulties by concluding, just as the prosecutor argues, gee, how is it, how does it happen, what's the chance, one in a million, that Evans identifies Mr. Allen as the man and then look, Mr. Allen happens to be the brother. That's the kind of coincidence that could make the difference in this case. And that was what the prosecutor's point was in repeating over and over again in closing argument that, hey, these guys are brothers. So, I rest. Thank you. Mr. Cetras, thank you. Mr. Gillette, thank you as well. The case just argued is submitted.
judges: Silverman, Rawlinson, Bertelsman